CASE SCHEDULED FOR ORAL ARGUMENT SEPTEMBER 16, 2024

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

|  |  |
|---|---|
| TIKTOK INC., *et al.*, <br><br> *Petitioners,* <br><br> v. <br><br> MERRICK B. GARLAND, in his official capacity as Attorney General of the United States, <br><br> *Respondent.* | No. 24-1113 <br> (consolidated with Nos. 24-1130, 24-1183) |

## TIKTOK PETITIONERS' REPLY IN SUPPORT OF CROSS-MOTION IN THE ALTERNATIVE FOR APPOINTMENT OF A SPECIAL MASTER

The government urges this Court to rely on secret evidence to uphold the most sweeping speech restriction in the nation's history. It asserts that neither due process nor the First Amendment require any efforts to mitigate the prejudice from barring adversarial testing of nearly one-third of the government's evidence.

Never mind that the First Amendment places the burden on the government to justify its unprecedented speech restriction—distinguishing this case from others where classified submissions have been permitted. Never mind that clear, material errors in the

government's public filings (which it casually minimizes as "imprecision") raise serious questions about the accuracy of its classified evidence. Gov't Reply/Opp'n 2. The government cavalierly urges the Court to simply look past these fundamental problems.

Meanwhile, the government is compounding the prejudice: on August 9, it filed a heavily redacted 174-page congressional hearing transcript, with the possibility of a corresponding *ex parte* classified submission "in advance of the September 16, 2024 oral argument." Amended Notice Regarding Transcript 3. Like the government's earlier redacted filings, the prospect of yet more secret evidence underscores the basic unfairness of requiring Petitioners to refute evidence they are not permitted to see.

The Court need not consider the government's *ex parte* submissions to enjoin the Act. TikTok Opp'n/Cross-Motion 2-3, 5-8. Nor does the Constitution permit the use of secret evidence to justify the extraordinary speech ban at issue here. *Id.* at 9-32. But if the Court nonetheless concludes that it should consider the government's *ex parte* filings, it must implement a fair process to mitigate the prejudice to Petitioners

and the 170 million Americans whose First Amendment rights are at stake.

The government's cursory response quibbles with the efficiency of appointing a special master, but offers no substantive reason why mitigation procedures are unworkable, nor any explanation why a temporary injunction to permit such mitigation would harm the government's interests. Mitigation cannot completely cure the prejudice caused by the government's extensive *ex parte* submissions, but it is the bare minimum the Constitution requires.

The special master process Petitioners propose offers a sensible path for recommending what those procedures should be. Even on the government's view that the merits panel should decide these matters for itself in the first instance, however, admitting the *ex parte* submissions *in toto* and then doing *nothing* is plainly untenable.

**1.** The government's principal argument is that Petitioners' cross-motion is untimely and incompatible with the expedited nature of these proceedings. Gov't Reply/Opp'n 3, 19. The government appears to believe that Petitioners should have made their request on May 17, 2024 as part of the parties' joint motion to govern proceedings. But the government's

3

position then was merely that it was "evaluating the need to file an *ex parte* evidentiary submission," to which Petitioners responded "that they reserve[d] their right to object to, or otherwise seek relief with respect to, any such classified, *ex parte* submission if it is made." Joint Mot. to Govern 4-5. The government took no issue with Petitioners' position at the time; indeed, if Petitioners had sought relief at that point from a hypothetical future *ex parte* submission, the government surely would have argued that the issue was not ripe.

Equally unavailing is the government's claim that a special master would "introduce unnecessary complexity and delay" that is not "compatible with the expedited nature of this case." Gov't Reply/Opp'n 19. To the extent the case presents "complexity and delay," it is entirely attributable to the *government's* decision to rely on extensive *post hoc* submissions—with key topics redacted almost in their entirety. *See, e.g.,* Gov't App.4-6 (Blackburn) (redacting five of six paragraphs summarizing purported "National Security Risks Associated with TikTok").

Petitioners have demonstrated that the Act is unconstitutional for reasons that do not require consideration of the government's *ex parte*

4

submissions, and that the Court can and should issue final judgment in Petitioners' favor on the current expedited schedule without any need to appoint a special master. TikTok Opp'n/Cross-Motion 2-3, 5-8. A special master is warranted only if the Court concludes that it should consider the Government's *ex parte* submissions. In that case, as Petitioners have explained, a temporary injunction of the Act would be necessary to preserve the status quo during the special master process or any alternative relief ordered by this Court. TikTok Opp'n/Cross-Motion 38-40; *see also* TikTok Br. 71-72.

The government complains generally about delay, but it identifies no particularized harm to its interests from temporarily enjoining the Act to ensure a fair process. Nor could it: the government claims its decision to ban TikTok was the result of concerns it has "articulated for years," Gov't Reply/Opp'n 4; the government has no evidence that China has sought U.S. TikTok users' sensitive personal information or influenced the distribution of content to U.S. users, TikTok Reply Br. 21, 26 (citing Gov't App.4, 16, 26 (Blackburn)); TikTok Inc. has implemented substantial protections against any such efforts, *id.* at 21-23, 25-26; and the Act's 270-day timeline allows the platform to continue to operate for

5

the entire Presidential election process. Indeed, the two leading presidential candidates are currently using the platform to interact with millions of voters. Creator Reply Br. 24 & n.2. The government cannot claim any urgency in banning TikTok.

**2.** Next, the government boldly asserts that it "cannot properly be forced to reveal … highly classified information to outside parties." Gov't Reply/Opp'n 6. But this Court surely may condition any grant of the *ex parte* motion on the government's compliance with ameliorating procedures—as this Court and other courts have done repeatedly when mitigating the prejudice from classified *ex parte* evidence. *See* TikTok Opp'n/Cross-Motion 36 & nn.15-16 (discussing cases). And there is no dispute that the Court has the authority to appoint a special master to recommend such procedures in the first instance. Fed. R. App. P. 48(a); TikTok Opp'n/Cross-Motion 34-35. The government then faces a choice: comply with the procedures or withdraw the secret evidence.

**3.** The government claims that the relevance of its classified evidence is not ripe for consideration on its motion (or Petitioners' cross-motion) and should instead be considered as part of the merits. Gov't Reply/Opp'n 8. *Contra* Fed. R. Evid. 402 ("Irrelevant evidence is not

6

admissible."). Either way, the government's position ignores a threshold task for which a special master would be well-suited: identifying what information was before Congress when it passed the Act.

The government bears the burdens of identifying Congress's "actual purpose" for banning TikTok, *Shaw v. Hunt*, 517 U.S. 899, 908 n.4 (1996) (citation omitted), and showing that Congress "seriously undertook to address the problem with less intrusive tools readily available to it," *McCullen v. Coakley*, 573 U.S. 464, 494 (2014). Yet it still avoids revealing what information in its classified submissions was actually provided to Congress, and whether that information was provided in a manner that reached, or was even available to, all Members. *See* Gov't Reply/Opp'n 9 (relying on declarations, but never stating that the same information was provided to Congress at all, let alone that it was available to all Members).

Petitioners have demonstrated that congressional findings are the only way to know the reasons why majorities of the House and Senate singled out TikTok. TikTok Br. 48-50; TikTok Reply Br. 16-18. But if the government's *post hoc* arguments are considered, there are serious questions regarding the extent to which the information submitted to this

7

Court actually was before the Members of Congress who voted to expressly target Petitioners; whether Congress had other, plainly impermissible purposes for that action, *see* TikTok Reply Br. 19; and whether Congress seriously considered less restrictive alternatives, TikTok Br. 46-47, 57-61; TikTok Reply Br. 29-30; Transcript 40-41 (redacting bulk of testimony addressing why Project Texas purportedly is not "sufficient"). A special master could recommend to the Court an appropriate process to assess these questions.

**4.** The government misses the point when it faults Petitioners for failing to explain "why this Court is incapable of assessing" the government's classified submissions. Gov't Reply/Opp'n 19. The entire premise of our adversarial system of justice is that the court is not an expert on the parties' dispute, and benefits from the parties' scrutinizing their opponents' evidence and arguments. *See* TikTok Opp'n/Cross-Motion 10. Given the fundamental importance of adversary proceedings, the role of a special master would be to recommend what "procedural protections … the particular situation demands," *Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 205 (D.C. Cir. 2001)

(quotation omitted), to mitigate prejudice to Petitioners from *their* inability to assess the government's *ex parte* evidence.

Without a special master process, for example, Petitioners would continue to be hamstrung in identifying and correcting factual errors in the government's redacted submissions—which seem likely to be present given the significant errors in its unredacted filings. The government now concedes "imprecision" in wrongly asserting that TikTok Inc. is owned by a Chinese company, and tries to shift attention by falsely blaming Petitioners' declarant for doing the same. Gov't Reply/Opp'n 2, 12.[1] It abandons its refrain that TikTok collects "precise" location data

---

[1] The referenced declaration from Professor Steven Weber does not in any way repeat the government's error. Rather, Professor Weber states (correctly): "TikTok has pointed out that ByteDance Ltd. is a Cayman Islands holding company, and that its operating entities in China are subsidiaries of ByteDance Ltd. References in this declaration to 'ByteDance' are to the corporate group, rather than any particular entity." App.769 n.24. The government misleadingly splices two separate sentences from Professor Weber's declaration to suggest that he "similarly" (Gov't Reply/Opp'n 12) referred to TikTok Inc. as being owned by a Chinese company. Here is what Professor Weber actually said: "Finally, the fact that ByteDance reportedly employs certain CCP members is likewise not a distinguishing feature of TikTok. As U.S. government officials have acknowledged, virtually all major Chinese companies are required to maintain internal committees comprised of CCP members, and in recent years, a number of U.S. companies doing business in China have instituted such committees of their own." App.772. Professor Weber was making a general point about companies

and now says it meant only IP address data, Gov't Reply/Opp'n 11, which is undisputedly *imprecise*, Supp.App.873-74 (Weber).  And it rewrites as "shorthand" its erroneous premise that TikTok's recommendation engine for U.S. users is located in China without defending its conclusion that this supposedly required U.S. user data to flow to China—or addressing other errors that rest on the same false assumption.  Gov't Reply/Opp'n 13-14; *see also* TikTok Reply Br. 30-32 (describing numerous errors in the government's *post hoc* objections to the draft National Security Agreement).

The Court would benefit from a process that would ferret out similar "imprecision" and "shorthand" in the government's redacted submissions—including any inaccuracies in the classified hearing before Members of Congress.  *See United States v. McGill*, 815 F.3d 846, 881 n.3 (D.C. Cir. 2016) ("Appellate judges are not bloodhounds who need only be put on the scent to go hunting for errors on their own.").  A special master would be well-positioned to recommend and administer such a process.

---

doing business in China (which includes ByteDance affiliates); he was not making any statement about the structure of TikTok Inc.'s ownership, let alone suggesting that TikTok Inc. was ultimately owned by a Chinese company.

Petitioners' inability to correct the government's factual errors, moreover, is only one of the many forms of prejudice a special master could assess. Petitioners are also precluded from supporting their arguments with redacted evidence that undermines the government's arguments. *See Al-Hela v. Biden*, 66 F.4th 217, 240 (D.C. Cir. 2023) (en banc) (district court ensured that "[Petitioner's] counsel had a sufficient opportunity to rebut the government's asserted factual basis for Petitioner's detention (*and to exploit exculpatory information*)" (emphasis added)). The hearing transcript, for example, includes a question about "e-commerce sites which are actually Chinese owned or Chinese"—the omission of which from the Act is an important element of its underinclusiveness—with the answer totally redacted. Transcript 162; *see also* TikTok Br. 56-57; TikTok Reply Br. 26-27.

**5.** Despite the clear prejudice to Petitioners, the government's position is that it should not be required to do *anything* to mitigate the harm from its classified filings. The government declares, for example, that it should not be required to disclose its *ex parte* submissions to cleared counsel for Petitioners, but it provides no explanation why such a disclosure would be unworkable for even a subset of its *ex parte*

11

submissions. Gov't Reply/Opp'n 7.[2] The government is similarly dismissive of procedures drawn from the Classified Information Procedures Act, even though this Court has recognized they can serve as an example outside of the criminal context where they directly apply. *See Parhat v. Gates*, 532 F.3d 834, 849 (D.C. Cir. 2008). And the government does not even bother to address the option of appointing an amicus. *See* TikTok Opp'n/Cross-Motion 36.

The government faults Petitioners for not being specific about the mitigation measures they are requesting, Gov't Reply/Opp'n 19, but, as previously explained, without any sense of what is contained in the government's secret filings, Petitioners cannot meaningfully assess what procedures, if any, would most effectively mitigate the prejudice from the government's *ex parte* submissions, TikTok Opp'n/Cross-Motion 37. Yet even so, Petitioners identified a range of options courts have considered,

---

[2] The government states that this case involves information classified at the "Secret" and "Top Secret" levels. Gov't Reply/Opp'n 6. One question for a special master is whether the government's categorical refusal to share its *ex parte* filing with cleared counsel for Petitioners (holding a current Top Secret clearance), can be justified for *all* classified information currently being withheld, including all information classified at the Secret level.

12

TikTok Opp'n/Cross-Motion 35-37, all of which the government rejects out of hand.

The most the government is willing to concede is that due process requires a "short unclassified summary" of the government's classified submission. Gov't Reply/Opp'n 18 (quoting *Bello v. Gacki*, 94 F.4th 1067, 1075-76 (D.C. Cir. 2024)). But the government gives short shrift to even this minimal form of mitigation, declaring that it has been satisfied by the public filing of the government's "core rationales, much of [its] supporting evidence, and [its] comprehensive legal argument." *Id.* Even if this statement constituted a representation that the government has provided the functional equivalent of an unclassified summary—and it falls short of that standard—this is *precisely* the type of assertion that a special master would be well-positioned to test: whether the government's public filings truly do contain the "who, what, when and where of [its classified] allegations." *Bello*, 94 F.4th at 1076 (quotations and citation omitted); *see also Al-Hela*, 66 F.4th at 240. As it is, the government's position amounts to nothing more than "trust us."

13

\*   \*   \*

The government's *ex parte* submissions should be rejected as offensive to both due process and the First Amendment. If the Court is inclined to consider those submissions, however, it should appoint a special master to assess what additional procedures, if any, could address the profound unfairness of deciding this case based on secret evidence.

Given the fact-intensive nature of the mitigation analysis, appointing a special master would be the most efficient way to assess these additional procedures. But whether that analysis is conducted by a special master or by the panel, it simply cannot be the case that due process and the First Amendment require the government to do nothing to mitigate the harm that would result from permitting its secret filings.

DATED: August 22, 2024

Andrew J. Pincus
Avi M. Kupfer
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
(202) 263-3220
apincus@mayerbrown.com
akupfer@mayerbrown.com

Respectfully submitted,

*/s/ Alexander A. Berengaut*
Alexander A. Berengaut
  *Counsel of Record*
David M. Zionts
Megan A. Crowley
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000
aberengaut@cov.com
dzionts@cov.com
mcrowley@cov.com

John E. Hall
Anders Linderot
S. Conrad Scott
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
(212) 841-1000
jhall@cov.com
alinderot@cov.com
cscott@cov.com

*Counsel for Petitioners
TikTok Inc. and ByteDance Ltd.*

## CERTIFICATE OF COMPLIANCE

This reply complies with the type-volume limitation of D.C. Circuit Rule 27(c) because it contains 2,592 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This reply complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point, Century Schoolbook font.

DATED: August 22, 2024               Respectfully submitted,

                                     /s/ Alexander A. Berengaut
                                     Alexander A. Berengaut
                                     COVINGTON & BURLING LLP
                                     One CityCenter
                                     850 Tenth Street, NW
                                     Washington, DC 20001
                                     (202) 662-6000
                                     aberengaut@cov.com

                                     *Counsel for Petitioners*
                                     *TikTok Inc. and ByteDance Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system on August 22, 2024.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

DATED: August 22, 2024            Respectfully submitted,

　　　　　　　　　　　　　　　　　　　*/s/ Alexander A. Berengaut*
　　　　　　　　　　　　　　　　　　　Alexander A. Berengaut
　　　　　　　　　　　　　　　　　　　COVINGTON & BURLING LLP
　　　　　　　　　　　　　　　　　　　One CityCenter
　　　　　　　　　　　　　　　　　　　850 Tenth Street, NW
　　　　　　　　　　　　　　　　　　　Washington, DC 20001
　　　　　　　　　　　　　　　　　　　(202) 662-6000
　　　　　　　　　　　　　　　　　　　aberengaut@cov.com

　　　　　　　　　　　　　　　　　　　*Counsel for Petitioners*
　　　　　　　　　　　　　　　　　　　*TikTok Inc. and ByteDance Ltd.*