ORAL ARGUMENT HELD SEPTEMBER 16, 2024

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

TIKTOK INC.,

and

BYTEDANCE LTD.,

*Petitioners*,

v.

MERRICK B. GARLAND, in his official capacity as Attorney General of the United States,

*Respondent.*

No. 24-1113
(consolidated with Nos. 24-1130, 24-1183)

**PETITIONERS' REPLY IN SUPPORT OF EMERGENCY MOTION FOR INJUNCTION PENDING SUPREME COURT REVIEW**

Even in a typical case, the courts of appeals play an important role in deciding motions for interim relief pending Supreme Court review. And this is not a typical case: not only are the speech rights of 170 million Americans on the line, but this Court is sitting as a trial court, which means the Supreme Court provides the only layer of appellate review.

Yet despite these extraordinary circumstances, the Government's opposition treats this Court as a mere speedbump on the road to Supreme Court review. The Government urges the Court to reject Petitioners' motion simply because it already ruled for the Government on the merits. But that is not the test. This Court has not hesitated to grant interim relief to a non-prevailing party, and such relief is especially appropriate here, where the Supreme Court is likely to grant certiorari (indeed, the Government never contends otherwise); the Government ignores Petitioners' main merits arguments; and the balance of equities weighs decisively in favor of an injunction. Petitioners' motion should be granted.

1. ***This Court's role.*** The Government trivializes this Court's role, first by asking the Court to summarily deny Petitioners' motion without even a response, *see* 12/9/24 Letter, Doc. #2088549, and now by accusing

1

Petitioners of asking this Court "to pretermit the Supreme Court's prerogative," Opp.11. The Supreme Court, however, generally requires parties seeking emergency relief to show that "the relief requested was first sought in the appropriate court or courts below." Sup. Ct. R. 23(3). This Court has a similar rule, *see* Fed. R. App. P. 8(a)(1)-(2); D.C. Cir. Handbook 33; it expects district courts not to reflexively deny interim relief just because they already ruled on the merits. Otherwise, "[p]rior recourse to the initial decisionmaker" would "hardly be required." *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc. (WMATA)*, 559 F.2d 841, 844 (D.C. Cir. 1977). The Supreme Court likewise expects this Court to independently decide whether "the equities of the case suggest that the status quo should be maintained." *Id.* at 845. This Court should thus reject the Government's efforts to bypass this Court at this critical stage of the judicial process.[1]

---

[1] Petitioners' motion is thus entirely consistent with the jointly proposed schedule that ensured time "to request emergency relief from the Supreme Court if necessary." Joint Motion to Govern Proceedings, Doc. #2055129, at 8. Requesting emergency relief from the Supreme Court means following the Supreme Court's rules, including asking this Court first. And emergency relief will be "necessary" only if this Court denies interim relief.

**2. *The governing standard.*** The Government also tries to erect an artificial barrier to interim relief by claiming the merits must be "indisputably clear." Opp.11 (quotation omitted). But that is not the standard. This Court applies the traditional four-factor framework—a likelihood-of-success standard—on "motion[s] for stay *or for emergency relief.*" D.C. Cir. Handbook 33 (emphasis added); *see, e.g.*, *Loma Linda-Inland Consortium for Healthcare Educ. v. NLRB*, 2023 WL 7294839, at *5 (D.C. Cir. May 25, 2023) (per curiam) (applying traditional "likelihood of success" standard "[i]n determining whether to issue an injunction pending appeal"); *id.* at *12 (Rao, J., dissenting) ("injunction pending appeal" should be granted under that standard). Indeed, the Supreme Court has faulted courts of appeals for "fail[ing] to grant an injunction pending appeal" when the applicants were "likely to succeed on the merits." *E.g.*, *Tandon v. Newsom*, 141 S.Ct. 1294, 1296-97 (2021) (per curiam).

It is irrelevant that *the Supreme Court* sometimes applies a heightened standard to injunction requests. Its rationale in such cases is that it would be "grant[ing] judicial intervention that has been withheld by [two] lower courts." *Lux v. Rodrigues*, 561 U.S. 1306, 1307

3

(2010) (Roberts, C.J., in chambers) (quotation omitted). That rationale is inapposite here. This Court is exercising *original* jurisdiction. As a result, it will be the *first* to consider whether interim equitable relief is warranted. In any event, the Supreme Court has routinely granted injunctive relief without requiring a heightened merits showing where, as here, withholding relief would effectively preclude meaningful review. *See, e.g.*, *Tandon*, 141 S.Ct. at 1296-97 (COVID restrictions on religious exercise); *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63, 66-68 (2020) (per curiam) (same).

Nor is there any "strong presumption" against interim relief. Opp.12. As the Government says, any such presumption "reflects the presumption of constitutionality" of the underlying statute. *Id.* (internal quotation omitted). But this case involves a speech restriction whose supposed justification "reference[s] the content of TikTok's speech," which led the panel majority to apply strict scrutiny. Op.30. Thus, "the usual presumption of constitutionality afforded congressional enactments is reversed." *United States v. Playboy Ent. Grp.*, 529 U.S. 803, 817 (2000). Any corresponding presumption against interim relief is reversed as well. *See Ashcroft v. ACLU*, 542 U.S. 656, 670 (2004)

4

("important practical reasons" to temporarily enjoin Act of Congress restricting speech "pending a full trial").

This Court should thus apply its normal standard for emergency interim relief. And it should remain mindful that such relief does not require "a prediction that [the Court] has rendered an erroneous decision," where, as here, it has "ruled on an admittedly difficult legal question" and "the equities of the case suggest that the status quo should be maintained." *WMATA*, 559 F.2d at 844-45.

**3. *Likelihood of success on the merits.*** The Government accuses Petitioners of reciting "a grab-bag of complaints." Opp.14. But this characterization is a transparent effort to avoid addressing Petitioners' lead arguments and focus instead on cherry-picked "example[s]." *Id.*

First, as Petitioners explained, the First Amendment requires the Government to *prove* that the less-restrictive alternative of disclosure would be inadequate to redress its asserted interest in preventing "covert" content manipulation. *See* Mot.20-21. The Government does not devote *a single word* to responding to this argument.

Second, Petitioners have also explained how Congress's purported data-protection justification is grossly underinclusive. They provided

5

evidence that the Act's generally applicable provisions exempt applications with comparable alleged China connections and that collect comparable data from Americans. Mot.22-23. The Government's cursory response is that this Court concluded that the Act could have banned TikTok "even if the Congress had not included the generally applicable framework" at all. Opp.15 (quoting Op.56). But that would make the Act *even more* underinclusive. The Government completely fails to *justify* leaving such "appreciable damage to [its] supposedly vital interest" unaddressed, which undermines any claim that it was pursuing data protection as "an interest of the highest order." *Reed v. Town of Gilbert*, 576 U.S. 155, 172 (2015) (quotation omitted).

**4. *Irreparable harm to Petitioners.*** Throughout this case, the Government has not disputed TikTok's showing of irreparable harm, and its opposition again fails to address (let alone rebut) Petitioners' evidence that they would suffer irreparable harm from even a temporary imposition of the Act's prohibitions. App.824-27; Chandlee Decl. ¶ 3. Nevertheless, the Government asserts for the first time that TikTok will suffer no immediate harm from the Act taking effect because existing users may continue to have access to the platform "for at least some

6

time." Opp.21 n.2. This new argument, which is at odds with an earlier Government concession, both ignores the loss of new TikTok users and mischaracterizes the effect of the prohibitions on existing users.

There is no dispute that, absent an injunction, TikTok will disappear from mobile app stores on January 19, 2025. TikTok will then be unavailable to the half of the country that does not already use the app. That alone is irreparable harm. *TikTok Inc. v. Trump*, 490 F. Supp. 3d 73, 84 (D.D.C. 2020) ("Barring TikTok from U.S. app stores would, of course, have the immediate and direct effect of halting the influx of new users, likely driving those users to alternative platforms and eroding TikTok's competitive position.").

Petitioners have also provided unrebutted evidence that the separate prohibition on "[p]roviding internet hosting services to enable the distribution, maintenance, or updating" of TikTok, Sec. 2(a)(1)(B), which includes "file hosting, domain name server hosting, cloud hosting, and virtual private server hosting," Sec. 2(g)(5), would "prevent us and our commercial partners from providing the services that enable the TikTok platform to function, effectively shutting down TikTok in the United States," App.825. Though the Government now complains that

7

TikTok "provide[s] no time frame for that [shutdown] to occur," Opp.21 n.2, the "time frame" is obvious from the record: the "termination" of hosting services will, on January 19, 2025, "cripple the platform in the United States and make it totally unusable." App.826. Not only did the Government fail to previously contest this evidence, it expressly conceded "that the deprivation of these services would practically preclude an application from continuing to be widely offered to American users." Gov't Br. 11.

5. *No harm to the Government.* The Government denies that the 270-day delayed effective date of the Act undermines the Government's claim to urgency in banning TikTok. The Government argues that the 270-day timeframe reflects an attempt to "balance" its national security interest against a "competing interest[]" in an "orderly change in ownership." Opp.19. Even if that were the case, there is nothing in the record to support the notion that Congress determined that there was anything special about 270 days. To the contrary, the unrebutted evidence establishes that the 270-day deadline was arbitrary and infeasible for its stated purpose. App.686. Moreover, whatever "balancing" is reflected by the 270-day implementation date, it simply

8

reinforces Petitioners' argument that there is no compelling urgency in banning the platform. When there is a truly urgent national security threat, the political branches promptly respond without "balancing" national security against orderly ownership changes. *Cf. Roman Catholic Diocese*, 592 U.S. at 17-19 (jurisdiction fatally undermined the urgency of COVID restrictions on worship services by exempting a wide variety of businesses for economic reasons unrelated to their COVID risk).

**6.** ***Public interest.*** The Government has no answer to Petitioners' argument that the public interest would be served by a temporary injunction for two independent reasons: (i) to permit the Supreme Court to consider this case in a more orderly fashion and (ii) to give the incoming Administration time to determine its position on this exceptionally important matter. Instead, the Government attacks a straw man: that an "injunction is warranted" solely for these reasons. Opp.20. To be clear, Petitioners satisfy *all the* elements of the standard for a temporary injunction, for the reasons set out in their motion and this reply, *including* because the public interest factor favors additional

9

deliberation before a speech platform used by 170 million Americans is banned.

**7. *Timing of certiorari petition.*** Finally, this Court should reject the Government's alternative request (Opp.21-22) that this Court should order Petitioners to file a cert petition within seven days as a condition of the injunction. Petitioners have no intention of engaging in undue delay and intend to file their cert petition within 30 days of this Court's entry of a temporary injunction. That would give the Supreme Court more than sufficient time to decide whether to take the case and, if so, resolve it this Term. At the Solicitor General's behest, the Supreme Court has previously expedited consideration of important cases by granting cert in February and scheduling briefing and argument during the same Term. *See, e.g.*, *Biden v. Texas*, 142 S.Ct. 1098 (2022) (No. 21-954) (granting certiorari on February 18, 2022 and directing that "[t]he case will be set for argument in the second week of the April 2022 argument session"); *Dep't of Com. v. New York*, 139 S.Ct. 953 (2019) (No. 18-966) (granting certiorari on February 15, 2019 and directing that "[t]he case will be set for argument in the second week of the April argument session").

10

If the next Administration wishes to propose that approach to the Court, it would be able to do so on Petitioners' proposed schedule. Importantly, though, filing Petitioners' cert petition within 30 days would give the new Administration an opportunity to determine whether it wishes to do so, by creating time for it to assess its position on this critical matter.

*   *   *

For the reasons set forth in their motion and above, Petitioners' emergency motion for an injunction pending Supreme Court review should be granted.

DATED: December 12, 2024                Respectfully submitted,

*/s/ Alexander A. Berengaut*

Noel J. Francisco                       Alexander A. Berengaut
Hashim M. Mooppan                         *Counsel of Record*
JONES DAY                               David M. Zionts
51 Louisiana Avenue, NW                 Megan A. Crowley
Washington, DC 20001                    COVINGTON & BURLING LLP
(202) 879-3939                          One CityCenter
njfrancisco@jonesday.com                850 Tenth Street, NW
hmmooppan@jonesday.com                  Washington, DC 20001
                                        (202) 662-6000
Andrew J. Pincus                        aberengaut@cov.com
Avi M. Kupfer                           dzionts@cov.com
MAYER BROWN LLP                         mcrowley@cov.com
1999 K Street, NW
Washington, DC 20006                    John E. Hall
(202) 263-3220                          Anders Linderot
apincus@mayerbrown.com                  COVINGTON & BURLING LLP
akupfer@mayerbrown.com                  The New York Times Building
                                        620 Eighth Avenue
                                        New York, NY 10018
                                        (212) 841-1000
                                        jhall@cov.com
                                        alinderot@cov.com

                                        *Counsel for Petitioners*
                                        *TikTok Inc. and ByteDance Ltd.*

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2) because it contains 2,020 words, excluding any materials exempted by Federal Rule of Appellate Procedure 27(a)(2)(B).

This motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO, Version 2402, in 14-point, Century Schoolbook font.

December 12, 2024

*/s/ Alexander A. Berengaut*
Alexander A. Berengaut
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000
aberengaut@cov.com

13

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system on December 12, 2024.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

December 12, 2024

*/s/ Alexander A. Berengaut*
Alexander A. Berengaut
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000
aberengaut@cov.com