## ORAL ARGUMENT SCHEDULED FOR SEPTEMBER 16, 2024

### No. 24-1113, 24-1130, 24-1183

---

## UNITED STATES COURT OF APPEALS
## FOR THE D.C. CIRCUIT

---

TIKTOK INC. AND BYTEDANCE LTD.,

*Petitioners*,

v.

MERRICK B. GARLAND, in his official capacity as Attorney General of the United States,

*Respondent.*

consolidated with

*caption continued on inside cover*

---

On Petitions for Review of Constitutionality of
the Protecting Americans from Foreign
Adversary Controlled Applications Act

---

## BRIEF OF AMICI CURIAE
## FORMER NATIONAL SECURITY OFFICIALS

Thomas R. McCarthy
Kathleen S. Lane
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
katie@consovoymccarthy.com

August 2, 2024

*Counsel for Amici Curiae*

BRIAN FIREBAUGH, CHLOE JOY SEXTON, TALIA CADET, TIMOTHY MARTIN, KIERA SPANN, PAUL TRAN, CHRISTOPHER TOWNSEND, and STEVEN KING

*Petitioners*,

v.

MERRICK B. GARLAND, in his official capacity as Attorney General of the United States,

*Respondent.*

———————————————

BASED POLITICS INC.

*Petitioners*,

v.

MERRICK B. GARLAND, in his official capacity as Attorney General of the United States,

*Respondent.*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rules 26.1 and 28(a)(1) and Fed. R. App. 26.1 the undersigned counsel certifies as follows:

## A. Parties and Amici

The parties to *TikTok Inc. v. Garland*, No. 24-1113, are Petitioners TikTok Inc and ByteDance Ltd., and Respondent Merrick B. Garland, in his official capacity as Attorney General of the United States. The parties to the first consolidated case, *Firebaugh v. Garland*, No. 24-1130, are the Creator Petitioners and Respondent Garland, in his official capacity as Attorney General of the United States. The parties to the second consolidated case, *BASED Politics Inc. v. Garland*, No. 24-1183, are Petitioner BASED Politics Inc. and Respondent Garland, in his official capacity as Attorney General of the United States. As of the finalization of this brief, the following amici have either filed a brief or a notice of intent to participate: Electronic Frontier Foundation, Freedom of the Press Foundation, TechFreedom, Media Law Resource Center, Center for Democracy and Technology, First Amendment Coalition, Freedom to Read Foundation, The Cato Institute, Professor Matthew Steilen, Arizona Asian American Native Hawaiian and Pacific Islander for Equity Coalition, Asian

i

American Federation, Asian Americans Advancing Justice Southern California, Calos Coalition, Hispanic Heritage Foundation, Muslim Public Affairs Council, Native Realities, OCA-Asian Pacific American Advocates of Greater Seattle, South Asian Legal Defense Fund; Sikh Coalition, Sadhana, San Francisco, Knight First Amendment Institute at Columbia University, Free Press, Pen American Center, Milton Mueller, Timothy H. Edgar, Susan A. Aaronson, Hans Klein, Hungry Panda US, Inc., Shubhangi Agarwalla, Enrique Armijo, Derek Bambauer, Jane Bambauer, Elettra Bietti, Ashutoh Bhagwat, Stuart N. Brotman, Anupam Chander, Erwin Chemerinsky, James Grimmelmann, Nikolas Guggenberger, G.S. Hans, Robert A. Heverly, Michael Karanicolas, Kate Klonick, Mark Lemley, David S. Levine, Yvette Joy Liebesman, Dylan K. Moses, Sean O'Brien, Christopher J. Sprigman.

Because these petitions were filed directly in this Court, there were no district court proceedings in any of the cases.

## B. Rulings Under Review

The petitions seek direct review of the constitutionality of the Protecting Americans from Foreign Adversary Controlled Applications Act

(H.R. 815, Div. H, 118th Cong., Pub. L. No. 118-50 (April 24, 2024). There were no district court proceedings in any of the cases.

## C. Related Cases

Amici are not aware of any other case pending before this or any other court that is related.

Dated: August 2, 2024

*/s/ Thomas R. McCarthy*
Thomas R. McCarthy

*Counsel for Amici Curiae*

# TABLE OF CONTENTS

Table of Contents..............................................................................iv

Table of Authorities ........................................................................ v

Glossary .........................................................................................xiii

Interest of Amici Curiae ..............................................................xiv

Summary of Argument....................................................................1

Argument ........................................................................................3

   I.   The Chinese government's control of TikTok presents a novel and serious national security threat.........................................................3

   II.  The Act is a measured step to resolve the national security concerns posed by the Chinese government's control of TikTok. ................ 14

      A.   The political branches have flagged the national security concerns posed by Chinese control of TikTok............................ 14

      B.   TikTok has failed to respond to these legitimate concerns.......21

      C.   Project Texas does not mitigate the risks or address the ongoing harms......................................................................................... 23

      D.   Congress passed the Act to resolve the national security concerns posed by Chinese control of TikTok. .......................................... 25

   III. The government's compelling national security interests overcome any applicable level of First Amendment scrutiny........................ 26

Conclusion......................................................................................33

Certificate of Compliance ......................................................... 34

Appendix A: List of Amici Curiae ...............................................

# TABLE OF AUTHORITIES

## Cases

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*,
 591 U.S. 430 (2020) ................................................................. 28

*Broadrick v. Oklahoma*,
 413 U.S. 601 (1973) ................................................................. 29

*China Telecom (Americas) Corp. v. FCC*,
 57 F.4th 256 (D.C. Cir. 2022) ................................................ 27

*Haig v. Agee*,
 454 U.S. 280 (1981) ............................................................ 28, 33

*Hamdi v. Rumsfeld*,
 542 U.S. 507 (2004) ................................................................. 14

*Heart of Atlanta Motel, Inc. v. United States*,
 379 U.S. 241 (1964) ................................................................. 14

*Heffron v. International Soc'y for Krishna Consciousness, Inc.*,
 452 U.S. 640 (1981) ............................................................ 30, 32

*Kovacs v. Cooper*,
 336 U.S. 77 (1949) ................................................................... 30

*Murthy v. Missouri*,
 144 S. Ct. 1972 (2024) ............................................................. 29

*Pacific Networks Corp. v. FCC*,
 77 F.4th 1160 (D.C. Cir. 2023) .............................................. 27

*Sorrell v. IMS Health, Inc.*,
 564 U.S. 552 (2011) ................................................................. 28

*TikTok Inc. v. CFIUS*,
 No. 20-1444 (D.C. Cir. 2020) ................................................ 17

*United States v. Curtiss-Wright Export Corp.*,
 299 U.S. 304 (1936). ............................................................... 31

*United States v. O'Brien*,
 391 U.S. 367 (1968) ............................................................ 31, 32

*United States v. Zhiyong*,
 1:20-cr-00046 (N.D. Ga. Jan. 28, 2020) .................................. 9

*Ward v. Rock Against Racism*,
  491 U.S. 781 (1989) ............................................................... 30

*Zivotofsky ex rel. Zivotofsky v. Kerry*,
  576 U.S. 1 (2015) .................................................................. 31

**Statutes**

12 U.S.C. §72 ........................................................................... 26

16 U.S.C. §797 ......................................................................... 26

42 U.S.C. §§2131-34.................................................................. 26

47 U.S.C. § 310(b)(3) ................................................................ 27

49 U.S.C. §§ 40102.................................................................... 27

Pub. L. No. 117-328, div. R (2023) ............................................ 16

Pub. L. No. 118-50, div. H (2024)......................................... 25, 26

**Regulations**

*Addressing the Threat Posed by TikTok*,
  85 Fed. Reg. 48637-38 (Aug. 6, 2020) .................................. 15

*Preventing Access to American's Bulk Sensitive Personal Data*,
  89 Fed. Reg. 15780 (Feb. 28, 2024) ...................................... 16

*Protecting Americans' Sensitive Data from Foreign Adversaries*,
  86 Fed. Reg. 31423 (June 9, 2021) ........................................ 15

*Statement by Secretary Steven T. Mnuchin Regarding the Acquisition of Musical.ly by ByteDance Ltd.*,
  85 Fed. Reg. 51297, 51297 (Aug. 14, 2020) .......................... 15

**Executive Branch Sources**

*Attorney General William P. Barr Announces Indictment of Four Members of China's Military for Hacking into Equifax*, Dep't of Justice (Feb. 10, 2020),
  https://perma.cc/9GRX-QR4V ................................................. 8

*Chinese Military Hackers Charged in Equifax Breach*, Federal Bureau of Investigation (Feb. 10, 2020)
  https://perma.cc/7JPH-G2EC ............................................... 7, 8

*Fireside Chat with DNI Haines*, DNI Office (Dec. 3, 2022),
  https://perma.cc/L6AY-TL4D .................................................. 17

*Member of Sophisticated China-Based Hacking Group Indicted for Series of Computer Intrusions*, Dep't of Justice (May 9, 2019) https://perma.cc/77P4-T7Y5 ............................................................. 7, 8

Memorandum for the Heads of Executive Departments and Agencies, *"No TikTok on Government Devices" Implementation Guidance*, OMB M-23-13 (Feb. 27, 2023) ........................................................ 16

*President's Decision Regarding the Acquisition by ByteDance Ltd. of the U.S. Business of muical.ly*, U.S. Dep't of Treasury (Aug. 14, 2020) .... 14

*Press Gaggle by Principal Deputy Press Secretary Olivia Dalton*, White House Briefing Room (Feb. 28, 2023) https://perma.cc/92PD-SQ66 .............................................................. 16

*Remarks by President Biden Before Air Force One Departure*, White House Briefing Room (Mar. 8, 2024) https://perma.cc/58NG-4YAP .............................................................. 16

*Safeguarding Our Future*, The National Counterintelligence and Security Center https://perma.cc/549G-W4X2 ................................................................. 4

**Congressional Sources**

H.R. 815, 118th Cong., Congress.gov (Apr. 24, 2024) ........................... 25

*Hearing Memorandum*, H. Comm. on Energy & Commerce, No. 118-13, 118th Cong., 1st Sess. (Mar. 20, 2023) ................................................. 19

*Hearing on 2024 Annual Threat Assessment*, U.S. Senate Select Committee Intelligence Hearing (Mar. 11, 2024) ................................... 4

*Hearing on Oversight of the Federal Bureau of Investigation*, House Judiciary Committee (July 12, 2023) ......................................... 5

*Hearing on the 2023 Annual Threat Assessment of the U.S. Intelligence Community*, U.S. Senate Select Comm. Intelligence Hearing (Mar. 8, 2023) ................................................................................................. 2

*Letter from Rep. Mike Gallagher to Christopher Wray, FBI Director* (Dec. 7, 2023) ................................................................................ 4, 20

*Letter from TikTok Inc. to Senators Blumenthal and Blackburn* (June 16, 2023) ................................................................................ 18

*Press Conference to Introduce the Protecting Americans from Foreign Adversary Controlled Applications Act*, China Select Committee (Mar. 6, 2024) .................................................................................... 20

Press Release, *Gallagher, Bipartisan Coalition Introduce Legislation to Protect Americans from Foreign Adversary Controlled Applications, Including TikTok* (Mar. 5, 2024) .................................................... 19, 25

Press Release, *Senators Introduce Bipartisan Bill to tackle National Security Threats from Foreign Tech* (Mar. 7, 2023) ............................ 18

*Protecting Americans from Foreign Adversary Controlled Applications*, H. Rep. 118-417, 118th Cong., 2d Sess. 1 (Mar. 11, 2024) .................. 19

*Restricting TikTok (Part I): Legal History & Background*, LSB10940 (Updated Sept. 28, 2023) ..................................................................... 19

*Restricting TikTok (Part II): Legislative Proposals & Considerations for Congress*, LSB10942 (updated Mar. 15, 2024) .................................... 19

Roll Call 145: H.R. 8038, Clerk of the United States House of Representatives, 118th Cong.(Apr. 20, 2024)...................................... 25

Roll Call 154: H.R. 815, United States Senate, 118th Cong. (Apr. 23, 2024) .............................................................................. 25

*Testimony of Shou Chew*, H. Comm. on Energy & Commerce, No. 118-13, 118th Cong., 1st Sess. (Mar. 23, 2023) .......................................... 19

*The Select: 'TikTok Special'-A weekly Committee Recap* (Mar. 8, 2024).............................................................................. 3, 10, 13

*TikTok: Frequently Asked Questions & Issues for Congress*, R48023 (Apr. 9, 2024), https://perma.cc/U2Q8-3L3N..................................... 19

*TikTok: How Congress Can Safeguard American Data Privacy*, Hearing Before the H. Comm. on Energy & Commerce, 118th Cong. (2023).................................................................... 7, 19, 21

*TikTok: Recent Data Privacy & Nat'l Security Concerns*, IN12131 (Mar. 29, 2023)............................................................................... 19

*TikTok: Technology Overview & Issues*, R46543 (updated June 30, 2023) .............................................................................................. 19

*Written Testimony of Geoffrey Cain on Social Media's Impact on Homeland Security*, U.S House of Representatives, Homeland Security and Governmental Affairs Committee (Sept. 14, 2022) ........ 18

**News Sources**

Alexander Ward & Matt Berg, *Why bin Laden's letter went viral on social media*, Politico (Nov. 16, 2023) https://perma.cc/4FSS-QYEW ................................................................ 13

Bethany Allen-Ebrahimian, *FCC commissioner says government should ban TikTok*, Axios (Nov. 1, 2022) https://perma.cc/WA2Y-XA76 ................................................................ 18

Cecelia Smith-Schoenwalder, *5 Threats FBI Director Wray Warns the U.S. Should Be Worried About*, U.S. News (Jan. 31, 2024) https://perma.cc/D3B6-Y3UR ................................................................ 17

D. Harwell & T. Room, *Inside TikTok*, Washington Post (Nov. 5, 2019), https://perma.cc/B368-JNN4 ................................................................ 23

D. Wallace, *TikTok CEO grilled on Chinese Communist Party influence*, Fox Business (Jan. 31, 2024), https://perma.cc/KJ9F-8HJ7 ................................................................ 22

Dan Verton, *Impact of OPM breach could last more than 40 years*, FEDSCOOP (July 10, 2015), https://perma.cc/E6QH-JHLU ................................................................ 10

*Deputy attorney general warns against using TikTok, citing data privacy*, ABCNews (Feb. 16, 2023), perma.cc/GKK7-BX9D ................................................................ 18

Donie O'Sullivan, et al., *Some young Americans on TikTok say they sympathize with Osama bin Laden*, CNN (Nov. 16, 2023), https://perma.cc/D6ST-9UL7 ................................................................ 12

Emily Baker-White, *EXCLUSIVE: TikTok Spied on Forbes Journalists*, Forbes (Dec. 22, 2022), https://perma.cc/XUS8-ATNP ................................................................ 7

Emily Baker-White, *TikTok's Secret 'Heating' Button Can Make Anyone Go Viral*, Forbes (Jan. 20, 2023), https://perma.cc/RW78-KTV9 ................................................................ 11

*FBI Chief Says TikTok 'Screams' of US National Security Concerns*,
Reuters (Mar. 9, 2023),
https://perma.cc/F5WC-7AF3 ................................................................ 17

Gaby Del Valle, *Report: TikTok's effort to silo US data 'largely cosmetic'*,
The Verge (Apr. 16, 2024),
https://perma.cc/WR45-NZCU ............................................................... 24

Georgia Wells, *TikTok Struggles to Protect U.S. Data from Its China
Parent*, WSJ (Jan. 30, 2024),
https://archive.is/a8LtA ......................................................................... 24

*Homeland Security Secretary on TikTok's Security Threat*, Bloomberg
(May 29, 2024),
https://perma.cc/W7PQ-68XH ............................................................... 17

*House lawmakers deeply concerned over TikTok despite CEO's
testimony*, CBS News (Mar. 23, 2023),
https://perma.cc/H95J-PETG ................................................................... 3

Ken Tran & Rachel Looker, *What does TikTok do with your data?*, USA
Today (Mar. 23, 2023),
https://perma.cc/2LVQ-3Z6L. .............................................................. 22

Kevin Breuninger & Eamon Javers, *Communist Party cells influencing
U.S. companies' China operations*, CNBC (July 12, 2023),
https://perma.cc/TU6B-GHYV ................................................................. 5

Lauren Feiner, *TikTok CEO says China-based ByteDance employees
still have access to some U.S. data*, CNBC (Mar. 23, 2023),
https://perma.cc/9LU9-JBAN ................................................................ 22

Louis Casiano & Hillary Vaugh, *TikTok CEO refuses to answer if
Chinese government has influence over platform as Congress mulls
ban*, Fox Business (Mar. 14, 2024),
https://perma.cc/8BCT-ERTL ................................................................ 22

Sapna Maheshwari & David McCabe, *TikTok Prompts Users to call
Congress to Fight Possible Ban*, N.Y. Times (Mar. 7, 2024),
https://perma.cc/GD3J-QNPV .......................................................... 2, 11

*See* Emily Baker-White, *Leaked Audio From 80 Internal TikTok
Meetings Shows That US User Data Has Been Repeatedly Accessed*

*From China*, Buzzfeed (June 17, 2022),
    https://perma.cc/7LF4-Y3XD ............................................................... 24

Thomas Fuller & Sapna Maheshwari, *Ex-ByteDance Executive Accuses
    Company of \'Lawlessness,\'* N.Y. Times (May 12, 2023),
    perma.cc/DE96-KD7G ....................................................................... 6

*US House passes bill that would ban TikTok*, Live Now Fox
    (Mar. 13, 2024)
    https://perma.cc/9M77-TQNW ............................................................. 9

Yaqiu Wang, *The Problem with TikTok's Claim of Independence from
    Beijing*, The Hill (Mar. 24, 2023),
    https://perma.cc/L44R-U9HL .............................................................. 6

Zen Soo, *Former ByteDance executive says Chinese Communist Party
    tracked Hong Kong protesters via data*, AP News (June 7, 2023),
    https://perma.cc/K9HB-XDBL ........................................................... 6, 7

**Other Authorities**

*A Tik-Tok-ing Timebomb*, NCRI and Rutgers Miller Center (Dec. 2023),
    https://perma.cc/4RFG-69RE ............................................................. 12

*A Tik-Tok-ing Timebomb: How TikTok's Global Platform Anomalies
    Align with the Chinese Communist Party's Geostrategic Objectives*,
    NCRI and Rutgers Miller Center (Dec. 2023),
    https://perma.cc/4RFG-69RE ............................................................. 29

Fergus Ryan, et al., *TikTok and WeChat: Curating and controlling
    global information flows*, Australian Strategic Policy Institute (2020),
    https://perma.cc/K3SF-DH2H ............................................................. 29

Fergus Ryan, et al., *TikTok and WeChat: Curating and Controlling
    Global Information Flows*, Australian Strategic
    Policy Institute (2020),
    https://perma.cc/K3SF-DH2H ............................................................. 12

Lauren Yu-Hsin Lin & Curtis J. Milhaupt, *CCP Influence over China's
    Corporate Governance*, Stanford Ctr. on China's Economy and
    Institutions (updated Nov. 1, 2022)
    https://perma.cc/PYL3-DDN2 ............................................................... 5

*Privacy Policy*, TikTok (last updated July 1, 2024),
    https://perma.cc/RV8S-U38H ............................................................... 3

Sascha-Dominik (Dov) Bachmann & Dr. Mohiuddin Ahmed, *Bin Laden's "Letter to America": TikTok and Information Warfare*, Aus. Inst. of Int'l Affairs (Dec. 1, 2023) https://perma.cc/4Y5D-NGCH.............................................................13

Scott Livingston, *The New Challenge of Communist Corporate Governance*, Ctr. for Strategic & Int'l Studies (Jan. 2021), https://perma.cc/X3KY-AYLC ...............................................................5

# GLOSSARY

Act             Protecting Americans from Foreign Adversary Controlled
                Applications Act

CCP             Chinese Communist Party

DNI             Director of National Intelligence

FBI             Federal Bureau of Investigation

OMB             Office of Management and Budget

OPM             Office of Personnel Management

## INTEREST OF AMICI CURIAE

Amici curiae are former national security government officials in their individual capacities.[1] Amici are filing this brief to address the national security concerns surrounding TikTok, ByteDance, and those entities' ties to a foreign adversary—the Chinese Communist Party.

Amici have served at the highest levels of government, in national security, intelligence, and foreign policy roles. They have served under different administrations, for leaders of different political parties, during different global conflicts, and have different foreign policy concerns. Despite their differences, amici have all served with a common goal and purpose: securing this Nation and protecting it from foreign threats. TikTok presents one such critical foreign threat. As former government officials and as national security experts, amici have a strong interest in ensuring that the Court understands and appreciates the national security interests at stake in this litigation. Amici are identified in Appendix A.

---

[1] No counsel for a party authored this brief in whole or in part, and no party or counsel for a party made a monetary contribution intended to fund its preparation or submission. No person other than the amici or their counsel made a monetary contribution to the preparation or submission of this brief.

## SUMMARY OF ARGUMENT

Approximately 170 million Americans use TikTok. Like other social media applications, TikTok collects massive amounts of personal data on its users, and TikTok has a proprietary algorithm that curates what each user sees on the app. Unlike other social media applications, however, TikTok is subject to the direction and control of the Chinese Communist Party. Congress, recognizing the national security threat posed by CCP control over TikTok sought to address this threat by enacting the Protecting Americans from Foreign Adversary Controlled Applications Act.

TikTok is owned by a Chinese company beholden to the Chinese Communist Party. Chinese government control over TikTok affords the CCP direct access to the massive amounts of personal data of those 170 million American TikTok users, and it allows the CCP to manipulate what those Americans see and share on TikTok. The former enables the CCP to collect, use, and exploit those vast swaths of personal information for its own benefit. As FBI Director Wray put it, TikTok is "one of the most valuable surveillance tools on the planet." *Hearing on the 2023 Annual Threat Assessment of the U.S. Intelligence Community* at 1:09:00, U.S. Senate Select Comm. Intelligence Hearing (Mar. 8, 2023) (testimony

of Director Wray) ("*2023 Threat Assessment Hearing*"), https://perma.cc/3YJG-XQDJ. And the latter enables the CCP to deploy TikTok as a widescale propaganda and misinformation machine to influence American policy debates. Indeed, TikTok sent its 170 million American users a prompt mischaracterizing the Act's divestment requirement as a flat ban on TikTok and encouraging them to call their representatives in Congress to oppose the Act. Sapna Maheshwari & David McCabe, *TikTok Prompts Users to call Congress to Fight Possible Ban*, N.Y. Times (Mar. 7, 2024), https://perma.cc/GD3J-QNPV.

Amici agree with the United States that the Act is a lawful exercise of Congressional authority to protect national security and that it does not run afoul of the First Amendment or any other Constitutional proscription. Amici write separately to underscore the grave national-security threats posed by Chinese control of TikTok; to highlight TikTok's failure to take any meaningful action to reduce those threats; and to explain that the compelling national security interests behind the Act overcome any applicable level of First Amendment scrutiny.

## ARGUMENT

**I.     The Chinese government's control of TikTok presents a novel and serious national security threat.**

TikTok presents a serious and unique national security threat to the United States because the data it collects is made available to the Chinese Communist Party and its ability to influence information shared through the application is subject to the direction and control of the CCP. TikTok collects massive amounts of information about the 170 million Americans using its application. USA.Br. 1, 18-39; *House lawmakers deeply concerned over TikTok despite CEO's testimony*, CBS News (Mar. 23, 2023), https://perma.cc/H95J-PETG. TikTok acknowledges that it automatically collects, among other things, its users profile information and image; connections between individual users; content shared between users; private messages; information found in a device's clipboard; and purchase and payment information. *Privacy Policy*, TikTok (last updated July 1, 2024), https://perma.cc/RV8S-U38H. Along with this information, TikTok collects voice and location data, and, perhaps most troublingly, the application may listent to users even when they are not using the application and even when their privacy settings are set to prohibit such collection. *The Select: 'TikTok Special'-A weekly Committee Recap* (Mar.

8, 2024), https://perma.cc/Z7YH-SW9S. In the aggregate, this vast dataset provides significant and deep insights into those using TikTok's application.

What makes TikTok unique from other social-media applications is that the CCP has direct access to this vast dataset. TikTok is owned by ByteDance, a Chinese corporation that is "beholden to the CCP." *Hearing on 2024 Annual Threat Assessment* at 1:09:50, U.S. Senate Select Committee Intelligence Hearing (Mar. 11, 2024) (statement of Director Wray), https://perma.cc/5ZMS-ZVR4; *see also Annual Threat Assessment of the U.S. Intelligence Community*, DNI Office (Feb. 5, 2024), https://perma.cc/NLG3-Z6R7. And China's National Intelligence Law requires ByteDance and TikTok to assist with intelligence gathering. *Letter from Rep. Mike Gallagher to Christopher Wray, FBI Director*, at 1 (Dec. 7, 2023), https://perma.cc/R352-UFKG. This means that ByteDance must provide China's intelligence agencies with direct access to the extensive personal data TikTok collects on its more than 170 million American users. *See Safeguarding Our Future*, The National Counterintelligence and Security Center, https://perma.cc/549G-W4X2; *see also* USA.Br. 17.

Beyond the access the CCP has to the data of American citizens, it is well-documented that the CCP also has significant *internal* influence over TikTok. The CCP requires certain companies, like TikTok, to host an internal party committee, which has the "sole function" of ensuring "compliance with [CCP] orthodoxy." *See Hearing on Oversight of the Federal Bureau of Investigation* at 3:19:00, House Judiciary Committee (July 12, 2023) (statement of Director Wray), https://perma.cc/87HV-YR8D; *see also* Kevin Breuninger & Eamon Javers*, Communist Party cells influencing U.S. companies' China operations*, CNBC (July 12, 2023), https://perma.cc/TU6B-GHYV. In some cases, the company's charter directly incorporates these internal party committees, giving the CCP even more power over "management decisions" and ensuring that CCP personnel "serve in management or board positions." Scott Livingston, *The New Challenge of Communist Corporate Governance*, Ctr. for Strategic & Int'l Studies (Jan. 2021), https://perma.cc/X3KY-AYLC; *see also* Lauren Yu-Hsin Lin & Curtis J. Milhaupt, *CCP Influence over China's Corporate Governance*, Stanford Ctr. on China's Economy and Institutions (updated Nov. 1, 2022), https://perma.cc/PYL3-DDN2.

Taken together, this means that TikTok automatically collects substantial amounts of data on over 170 million Americans, which is then directly accessible by the CCP—whether through Chinese intelligence laws or through internal pressure and control from those planted within the company to carry out CCP's policy objectives. Indeed, a former TikTok executive confirmed that CCP members were specifically stationed at ByteDance in order to review data collected through TikTok, and to influence internal decisions about how the TikTok algorithm works to convey information to its users, including more than 170 million Americans. *See* Zen Soo, *Former ByteDance executive says Chinese Communist Party tracked Hong Kong protesters via data*, AP News (June 7, 2023), https://perma.cc/K9HB-XDBL; Thomas Fuller & Sapna Maheshwari, *Ex-ByteDance Executive Accuses Company of 'Lawlessness,'* N.Y. Times (May 12, 2023), perma.cc/DE96-KD7G. The pressure the CCP exerts on TikTok and its parent, ByteDance, is also readily apparent. For example, last year, ByteDance executives publicly apologized for deviating from "socialist core values" for "vulgar" content on one of its other applications. *See* Yaqiu Wang, *The Problem with TikTok's Claim of Independence from Beijing*, The Hill (Mar. 24, 2023), https://perma.cc/L44R-U9HL. And

ByteDance has used its data collection to track political activity, including activities of Hong Kong protestors and commentary by American journalists. *See* Emily Baker-White, *EXCLUSIVE: TikTok Spied on Forbes Journalists*, Forbes (Dec. 22, 2022), https://perma.cc/XUS8-ATNP; Soo, *supra*; *TikTok: How Congress Can Safeguard American Data Privacy*, Hearing Before the H. Comm. on Energy & Commerce, 118th Cong. (2023) ("*2023 House Data Privacy Hearing*"). The CCP's control over TikTok and its direct access to the personal data of 170 million Americans standing alone therefore presents grave national security concerns.

These concerns are only heightened by the fact that the Chinese government has access to massive amounts of additional highly sensitive data—data belonging to hundreds of millions of Americans that China has obtained through cyber operations undertaken by sophisticated Chinese-government intelligence and military hackers. *See, e.g.*, *Member of Sophisticated China-Based Hacking Group Indicted for Series of Computer Intrusions*, Dep't of Justice (May 9, 2019) ("*Anthem Breach*"), https://perma.cc/77P4-T7Y5; *Chinese Military Hackers Charged in Equifax Breach*, Federal Bureau of Investigation (Feb. 10, 2020) ("*Equifax Breach*"), https://perma.cc/7JPH-G2EC; David E. Sanger, et al.,

*Marriott Data Breach is Traced to Chinese Hackers*, N.Y. Times (Dec. 11, 2018), https://perma.cc/3EJT-BPL9; *Attorney General William P. Barr Announces Indictment of Four Members of China's Military for Hacking into Equifax*, Dep't of Justice (Feb. 10, 2020), https://perma.cc/9GRX-QR4V. In the OPM breach, hackers working on behalf of the Chinese government exfiltrated over 20 million personnel records of American government employees holding Top Secret/Sensitive Compartmented Information (TS/SCI) clearances, collecting social security numbers, dates and places of birth, addresses, and detailed background check data—including "financial data; information about spouses, children and past romantic relationships; and any meetings with foreigners"—on the very government employees that the U.S. government entrusts with its most sensitive classified intelligence information. *See* Sanger, *supra*. Through the Anthem hack, the Chinese government also obtained the addresses, birth dates, and social security numbers of more than 78 million Americans and may also have obtained protected health information. *See Anthem Breach, supra*. Likewise, in the Equifax data breach, Chinese military hackers working for the People's Liberation Army (PLA) obtained the highly sensitive personal data of 145 million Americans—nearly half the

8

U.S. population—potentially including financially sensitive creditworthiness information. *See, e.g., Equifax Breach, supra*; *see also* Criminal Indictment, *United States v. Zhiyong*, 1:20-cr-00046, Doc. 1 (N.D. Ga. Jan. 28, 2020). And in the Marriott hack, Chinese hackers working for the Ministry of State Security, a key CCP intelligence agency, obtained the personal details of approximately 500 million guests at the "top hotel provider for American government and military personnel," including hotel stays and passport information. *See* Sanger, *supra*.

Collectively, the Chinese government has access to information about Americans' day-to-day routines from TikTok—cataloguing who these Americans interact with, what they do, and where they go—as well as access to many of these individuals' most sensitive personal information. *See US House passes bill that would ban TikTok*, Live Now Fox (Mar. 13, 2024) (statement of Jamil Jaffer), https://perma.cc/9M77-TQNW. The CCP can exploit this massive trove of sensitive data to power sophisticated artificial intelligence (AI) capabilities that can then be used to identify Americans for intelligence collection, to conduct advanced electronic and human intelligence operations, and may even be weaponized to undermine the political and economic stability of the United States

and our allies. *Id.; see also* Sanger, *supra* ("Such information is exactly what the Chinese use to … build a rich repository of Americans' personal data for future targeting."). Indeed, according to former CIA Director Gen. (Ret.) Michael Hayden, speaking about the OPM data breach specifically, there isn't "recovery from what was lost…[i]t remains a treasure trove of information that is available to the Chinese until the people represented by the information age off[]…[t]here's no fixing it." Dan Verton, *Impact of OPM breach could last more than 40 years*, FEDSCOOP (July 10, 2015), https://perma.cc/E6QH-JHLU. The combined national security impact of these hacks—when added to the sensitive social networking, location, and behavioral information on 170 million Americans available to the Chinese government through its direct access to TikTok data—is thus nearly impossible to overstate.

And it only gets worse. The CCP also uses TikTok as both a propaganda and misinformation tool to wield influence over Americans by pushing specific CCP-chosen content while hiding its source. Indeed, most young Americans today do not use TikTok simply to watch or "promote weird dance videos." *The Select: 'TikTok Special,' supra* (statement of Chairman Gallagher). To the contrary, TikTok is the "dominant news

platform for Americans under 30." *Id.*; *see also* TikTok.Br. 41. Given the CCP's external and internal influence over ByteDance and TikTok, the reliance by young people on TikTok for their daily news feed ensures that the CCP maintains editorial control over the content it gets tens of millions of American young people to consume every single day.

TikTok and ByteDance also have the power to boost certain videos and themes through their proprietary and confidential recommendation algorithm providing CCP officials yet another methodology for shaping the content seen and shared by American TikTok users. *See* Emily Baker-White, *TikTok's Secret 'Heating' Button Can Make Anyone Go Viral*, Forbes (Jan. 20, 2023), https://perma.cc/RW78-KTV9. For example, Tik-Tok sent 170 million Americans a prompt encouraging them to call their representatives in Congress to oppose the very legislation before this Court. Maheshwari & McCabe, *supra*. This lobbying effort—created and driven by ByteDance, a CCP-proxy—prompted a "flood of phone calls" to congressional offices to oppose a purported "TikTok shutdown." *Id.* This example alone underscores how the CCP can deploy TikTok as a highly effective propaganda and misinformation tool to influence American policy debates.

11

Likewise, there is strong evidence that the TikTok content algorithm is built to effectuate the interests of the CCP and to limit content that might undermine its interests. For example, in 2023, the Network Contagion Research Institute released a report highlighting that the TikTok recommendation algorithm regularly down-prioritized content critical of the Chinese regime or supportive of the Hong Kong protestors. *A Tik-Tok-ing Timebomb*, NCRI and Rutgers Miller Center (Dec. 2023), https://perma.cc/4RFG-69RE; *see also* Fergus Ryan, et al., *TikTok and WeChat: Curating and Controlling Global Information Flows*, Australian Strategic Policy Institute (2020), https://perma.cc/K3SF-DH2H. Such decisions are not random and instead point to a concerted effort by TikTok and ByteDance to effectuate the CCP's goals and interests.

Similarly, the TikTok algorithm at times seeks to undermine American and allied interests. For example, in November 2023, in the aftermath of the horrific October 7 terrorist attacks conducted by Hamas in Israel, a flood of videos, one feeding off the other, praising Osama bin Laden's 2002 "Letter to America," were promoted across American feeds by the TikTok algorithm. *See* Donie O'Sullivan, et al., *Some young Americans on TikTok say they sympathize with Osama bin Laden*, CNN (Nov.

16, 2023), https://perma.cc/D6ST-9UL7. Without access to TikTok's proprietary algorithm, lawmakers questioned whether TikTok—controlled by the CCP—was affirmatively boosting the video. Alexander Ward & Matt Berg, *Why bin Laden's letter went viral on social media*, Politico (Nov. 16, 2023), https://perma.cc/4FSS-QYEW. Regardless whether TikTok affirmatively boosted the videos, two prominent Australian researchers recently explained that the Bin Laden incident demonstrates how "TikTok adds a force multiplier effect for disinformation [campaigns]" and noted that "[w]ith more than two billion TikTok users, a strategically crafted misinformation campaign can have a high chance of success," highlighting the "potential for [such videos]…to be[] a severe national security threat and have dangerous consequences." Sascha-Dominik (Dov) Bachmann & Dr. Mohiuddin Ahmed, *Bin Laden's "Letter to America": TikTok and Information Warfare*, Aus. Inst. of Int'l Affairs (Dec. 1, 2023), https://perma.cc/4Y5D-NGCH.

Each of these aspects of Chinese control over TikTok—the massive information gathering efforts, the internal pressure and control over company policy, the use of TikTok in combination with the fruits of CCP-coordinated hacking efforts, and the propaganda machine—is

13

independently problematic from a national security perspective. To-
gether, they demonstrate that Chinese control of TikTok "poses a clear
and present threat to America." *The Select: 'TikTok Special,' supra*.

## II.  The Act is a measured step to resolve the national security concerns posed by the Chinese government's control of Tik-Tok.

The record here is "replete with evidence" of the national security

harms posed by the Chinese government's ownership of TikTok. *See*

*Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 252 (1964);

*Hamdi v. Rumsfeld*, 542 U.S. 507, 539 (2004). The Executive Branch and

bipartisan majorities in Congress have highlighted these concerns and

worked to address them directly. Because TikTok has failed to meaning-

fully address these concerns, Congress passed the Act, and the President

signed it into law specifically to address the grave national security

harms threatened by Chinese control over TikTok.

### A. The political branches have flagged the national security concerns posed by Chinese control of TikTok.

***The Executive Branch.*** The Executive Branch has been raising

concerns about TikTok for years. In 2019, CFIUS reviewed ByteDance's

acquisition of musical.ly, citing national security concerns. *President's*

*Decision Regarding the Acquisition by ByteDance Ltd. of the U.S.*

*Business of muical.ly*, U.S. Dep't of Treasury (Aug. 14, 2020). Following this review, and pursuant to statutory authority, President Trump ordered ByteDance to divest certain assets "used to enable or support ByteDance's operation of the TikTok application in the United States." *Statement by Secretary Steven T. Mnuchin Regarding the Acquisition of Musical.ly by ByteDance Ltd.*, 85 Fed. Reg. 51297, 51297 (Aug. 14, 2020); *see also Addressing the Threat Posed by TikTok*, 85 Fed. Reg. 48637-38 (Aug. 6, 2020). In the Executive Order, the President described how TikTok's data collection "threatens to allow the Chinese Communist Party access to Americans' personal and proprietary information." *Id.* at 48637. Specifically, the President explained that this data would allow "China to track the locations of Federal employees and contractors, build dossiers of personal information for blackmail, and conduct corporate espionage." *Id.*

While President Biden revoked this Order in favor of taking other action, he continued to press the issues arising at the intersection of national security and data collection, including specifically addressing the threat posed by TikTok and ByteDance. *See Protecting Americans' Sensitive Data from Foreign Adversaries*, 86 Fed. Reg. 31423 (June 9, 2021).

15

Following the passage of legislation on the use of TikTok on government devices, White House rapidly implemented guidance to effectuate the removal of TikTok from government devices. *See* Memorandum for the Heads of Executive Departments and Agencies, *"No TikTok on Government Devices" Implementation Guidance*, OMB, M-23-13 (Feb. 27, 2023) (OMB TikTok Guidance); *see also* Pub. L. No. 117-328, div. R, §§ 101-02. The Administration also explained that it had "serious concerns" with TikTok and would continue to look "at other actions" it could take. *Press Gaggle by Principal Deputy Press Secretary Olivia Dalton*, White House Briefing Room (Feb. 28, 2023), https://perma.cc/92PD-SQ66. And shortly after TikTok was banned from government devices, President Biden stated that he would sign a bill banning TikTok altogether. *Remarks by President Biden Before Air Force One Departure*, White House Briefing Room (Mar. 8, 2024), https://perma.cc/58NG-4YAP.

Moreover, in his latest Executive Order regarding data collection issued less than six months ago, President Biden announced new proposals to regulate the type of data that "countries of concern," like China, have access to through applications like TikTok. *See Preventing Access to American's Bulk Sensitive Personal Data*, 89 Fed. Reg. 15780 (Feb. 28,

2024). The President specifically described how access to such data allows these countries of concern to engage in "malicious activities" like "espionage, influence, kinetic, or cyber operations." *Id.* at 15781. And under President Biden, the Department of Justice has continued to defend its authority over ByteDance and TikTok in the musical.ly acquisition before this Court. *See* Petition for Review, *TikTok Inc. v. CFIUS*, No. 20-1444, Doc. 1870778 (D.C. Cir. 2020).

Members of the Executive Branch have also repeatedly testified before Congress and warned the American public in detail about the grave national security threats posed by Chinese control of TikTok as well as ByteDance's direct links to the CCP. *See, e.g.*, *2023 Threat Assessment Hearing*, *supra*; *Homeland Security Secretary on TikTok's Security Threat*, Bloomberg (May 29, 2024) (interview with Secretary Mayorkas), https://perma.cc/W7PQ-68XH; *Fireside Chat with DNI Haines*, DNI Office (Dec. 3, 2022), https://perma.cc/L6AY-TL4D.[1] Between the Executive

---

[1] *See, e.g.*, *FBI Chief Says TikTok 'Screams' of US National Security Concerns*, Reuters (Mar. 9, 2023), https://perma.cc/F5WC-7AF3; Cecelia Smith-Schoenwalder, *5 Threats FBI Director Wray Warns the U.S. Should Be Worried About*, U.S. News (Jan. 31, 2024) (statement of Director Wray), https://perma.cc/D3B6-Y3UR.

Orders, testimony, and its public statements, as well as its filings in litigation brought by TikTok itself, the Executive Branch has repeatedly made clear its national security concerns regarding TikTok.[2]

**Congress.** Congress has likewise been quite direct and clear about its national security concerns. Elected officials from both sides of the aisle have expressed deep concerns with TikTok's data collection practices.[3] For example, Senator Warner (D-VA) and Senator Thune (R-SD) explained that TikTok can "enable surveillance by the Chinese Communist Party, or facilitate the spread of malign influence campaigns in the U.S." Press Release, *Senators Introduce Bipartisan Bill to tackle National Security Threats from Foreign Tech* (Mar. 7, 2023), https://perma.cc/X95L-4CD6. In the House of Representatives, Representative Gallagher (R-WI) and Representative Krishnamoorthi (D-IL) stated that "[s]o long as

---

[2] Independent agency leaders have express similar concerns. *See* Bethany Allen-Ebrahimian, *FCC commissioner says government should ban TikTok*, Axios (Nov. 1, 2022), https://perma.cc/WA2Y-XA76.

[3] *See, e.g.*, *Letter from TikTok Inc. to Senators Blumenthal and Blackburn* (June 16, 2023), perma.cc/4WXM-VR24; *Written Testimony of Geoffrey Cain on Social Media's Impact on Homeland Security*, U.S House of Representatives, Homeland Security and Governmental Affairs Committee (Sept. 14, 2022), https://perma.cc/UDW5-PWW4; *Deputy attorney general warns against using TikTok, citing data privacy*, ABCNews (Feb. 16, 2023), perma.cc/GKK7-BX9D.

[TikTok] is owned by ByteDance…TikTok poses critical threats to our national security." Press Release, *Gallagher, Bipartisan Coalition Introduce Legislation to Protect Americans from Foreign Adversary Controlled Applications, Including TikTok* (Mar. 5, 2024) ("*Gallagher Press Release*"), https://perma.cc/6NHJ-ZQCJ. Likewise, the Congressional Research Service has written several reports on the critical privacy and security issues in play with respect to TikTok.[4] And Congress held several hearings and briefings on the matter.[5] At these hearings, members of Congress, like Senator Rubio, expressed specific concerns about how the

---

[4] *See, e.g.*, *TikTok: Recent Data Privacy & Nat'l Security Concerns*, IN12131 (Mar. 29, 2023), https://perma.cc/9E94-3C25; *TikTok: Technology Overview & Issues*, R46543 (Updated June 30, 2023), https://perma.cc/U9SD-98EM; *Restricting TikTok (Part I): Legal History & Background*, LSB10940 (Updated Sept. 28, 2023), https://perma.cc/UV27-YBRL*; Restricting TikTok (Part II): Legislative Proposals & Considerations for Congress*, LSB10942 (Updated Mar. 15, 2024), https://perma.cc/PMW2-2QUB; *TikTok: Frequently Asked Questions & Issues for Congress*, R48023 (Apr. 9, 2024), https://perma.cc/U2Q8-3L3N.

[5] *See, e.g.*, *2023 Threat Assessment Hearing* at 1:09:00, *supra*; *Testimony of Shou Chew*, H. Comm. on Energy & Commerce, No. 118-13, 118th Cong., 1st Sess. (Mar. 23, 2023), https://perma.cc/6G5S-K77A; *Hearing Memorandum*, H. Comm. on Energy & Commerce, No. 118-13, 118th Cong., 1st Sess. (Mar. 20, 2023), https://perma.cc/3EV6-7AZA; *2023 House Data Privacy Hearing, supra*; *Protecting Americans from Foreign Adversary Controlled Applications*, H. Rep. 118-417, 118th Cong., 2d Sess. 1 (Mar. 11, 2024), https://perma.cc/9S3H-GME8.

19

CCP manipulates information fed through TikTok and argued that the application "is probably one of the most valuable surveillance tools on the planet." *2023 Threat Assessment Hearing* at 1:09:00, *supra*.

Indeed, it was concerns about the CCP and its activities targeting Americans that convinced the House of Representatives to establish the Select Committee on Strategic Competition between the United States and the CCP. The China Select Committee, as it is colloquially known, has repeatedly sounded the alarm over the national security threat posed by TikTok. *See, e.g., Rep. Gallagher Letter*, *supra*. Specifically, the China Select Committee has noted that "the Chinese Communist Party—and its leader Xi Jinping, have their hands deep in the inner workings of" TikTok," explaining that ByteDance "is legally required to support the work of the Chinese Communist Party." *See Press Conference to Introduce the Protecting Americans from Foreign Adversary Controlled Applications Act*, China Select Committee (Mar. 6, 2024) (statement of Chairman Gallagher), https://perma.cc/NBC3-H3PB.[6] Likewise, during a China

---

[6] The States, too, have long been investigating TikTok under their consumer and child protection laws, police powers, and their authority to protect state systems and critical infrastructure. *See, e.g.*, David Shepardson, *State AGs demand TikTok comply with US consumer protection*

Select Committee hearing to discuss the CCP's support for America's adversaries, former Secretary Pompeo described TikTok as engaging in "information warfare" because it delivers different content to Americans than it does to individuals in China. *See Transcript of Hearing on Authoritarian Alignment*, China Select Committee (Jan. 30, 2024), https://perma.cc/XQD2-578Z.

### B. TikTok has failed to respond to these legitimate concerns.

Despite these public concerns, TikTok itself has repeatedly failed to effectively address legitimate questions from Congress and others on how it collects, stores, and shares data, including sensitive personal data of Americans. *See 2023 House Data Privacy Hearing*, *supra*. And the fact

---

*investigations*, Reuters (Mar. 6, 2023), perma.cc/9NL6-2VPW; Justine McDaniel, *Indiana sues TikTok, claiming it exposes children to harmful content*, Washington Post (Dec. 7, 2022), perma.cc/V2RV-AU3P; *see also, e.g.*, *ICYMI: Attorney General Austin Knudsen Joined Krach Institute to Discuss Montana's TikTok Ban and Chinese Spy Balloon*, Montana Dep't of Justice (Sept. 28, 2023), https://perma.cc/UN8H-2ZNL; *Attorney General Miyares Leads 18 State Coalition Supporting Montana's TikTok Ban*, Office of the Virginia Attorney General (Sept. 19, 2023), https://perma.cc/27R8-2DAY. Indeed, as of March 2024, thirty-nine States have barred TikTok from government devices, citing concerns about the security of state and critical infrastructure systems as well as state government data. *See* Cailey Gleeson*, These 39 States Already Ban TikTok From Government Devices*, Forbes (Mar. 12, 2024), https://perma.cc/T7Y4-XJY9.

that China "has made clear in public statements that it would not permit a forced divestment," only reinforces these concerns. TikTok.Br. 2.

For example, at a congressional hearing last year, TikTok's CEO acknowledged that some China-based employees continue to have access to U.S. data, including sensitive personal data of Americans. Lauren Feiner, *TikTok CEO says China-based ByteDance employees still have access to some U.S. data*, CNBC (Mar. 23, 2023), https://perma.cc/9LU9-JBAN. Moreover, when pressed, TikTok's CEO could not say whether TikTok sells data to other entities or whether the Chinese government exerts influence over TikTok. *See* Louis Casiano & Hillary Vaugh, *TikTok CEO refuses to answer if Chinese government has influence over platform as Congress mulls ban*, Fox Business (Mar. 14, 2024), https://perma.cc/8BCT-ERTL; Ken Tran & Rachel Looker, *What does TikTok do with your data?*, USA Today (Mar. 23, 2023), https://perma.cc/2LVQ-3Z6L. And when asked whether ByteDance has an internal CCP committee, the TikTok CEO punted, responding, "[l]ike I said, all businesses that operate in China have to follow the law." *See* D. Wallace, *TikTok CEO grilled on Chinese Communist Party influence*, Fox Business (Jan. 31, 2024), https://perma.cc/KJ9F-8HJ7. The inability

of senior TikTok leaders to effectively allay the basic concerns of American lawmakers only reinforces the pervasive and unique threat that TikTok poses to Americans and our national security.

### C. Project Texas does not mitigate the risks or address the ongoing harms.

Finally, TikTok's efforts to appease U.S. lawmakers through a plan to retain American data wholly in the United States (aka "Project Texas") have likewise failed to meaningfully eliminate key national security concerns. While the physical location of data storage for American user may conceivably alleviate *some* concerns, what really matters is the "leverage" China "has over the people who have access to that data." *See* D. Harwell & T. Room, *Inside TikTok*, Washington Post (Nov. 5, 2019), https://perma.cc/B368-JNN4 . Contrary to TikTok's claims about how Project Texas would protect American data and limit the threat posed to Americans from potential disinformation efforts, TikTok's own repeated statements reveal that the CCP continues to have access to user data stored in America and exercises deep influence on—and control over—TikTok's internal decision making. Indeed, TikTok "[m]anagers told employees that they actually could save data to their computers, and that there would be exceptions" to Project Texas's data sharing restrictions.

23

Georgia Wells, *TikTok Struggles to Protect U.S. Data from Its China Parent*, WSJ (Jan. 30, 2024), https://archive.is/a8LtA.

As long as TikTok continues to use its own algorithm—developed and managed in China—the CCP is bound to be able to access data, regardless where it is stored. As one TikTok employee stated, "[i]t remains to be seen if at some point product and engineering can still figure out how to get access, because in the end of the day, it's their tools." *See* Emily Baker-White, *Leaked Audio From 80 Internal TikTok Meetings Shows That US User Data Has Been Repeatedly Accessed From China*, Buzzfeed (June 17, 2022), https://perma.cc/7LF4-Y3XD. Indeed, while Project Texas may look good on paper, former employees have said the project has been mostly "cosmetic" and has failed to address the core concerns over the application and CCP access to American data. *See* Gaby Del Valle, *Report: TikTok's effort to silo US data 'largely cosmetic'*, The Verge (Apr. 16, 2024), https://perma.cc/WR45-NZCU.

In sum, after months of digging deep into TikTok and its operations, it was clear to key Congressional leaders that TikTok fundamentally functions as an arm of the CCP in both promoting and censoring data in the interests of the CCP. And because TikTok fails to meaningfully

address the national security concerns, Congress was forced to step in and take action.

### D. Congress passed the Act to resolve the national security concerns posed by Chinese control of TikTok.

The Act addresses these precise concerns. In March 2024, the bipartisan leadership of the China Select Committee, along with other key members of the House, introduced legislation that became the genesis for the legislation challenged in this matter. *See* Pub. L. No. 118-50, div. H, 138 Stat. 955 (2024); *see also Gallagher Press Release*, *supra*. Relying on the extensive record built over the preceding months as it conducted its deep dive into the national security threat posed by TikTok, the legislation—which was incorporated into a foreign aid package—easily passed the House and Senate. Roll Call 145: H.R. 8038, Clerk of the United States House of Representatives, 118th Cong.(Apr. 20, 2024) (passing the House with a vote of 360-58); Roll Call 154: H.R. 815, United States Senate, 118th Cong. (Apr. 23, 2024) (passing the Senate with a vote of 79-18). President Biden signed the bill into law the following morning. *See* H.R. 815, 118th Cong., Congress.gov (Apr. 24, 2024). This legislation—which only requires divestment by ByteDance of the TikTok application—and does not effectuate any restrictions on TikTok's availability if

divestiture happens—is a measured and sensible response to the national security threat posed by TikTok. *See* Pub. L. No. 118-50.

## III. The government's compelling national security interests overcome any applicable level of First Amendment scrutiny.

Having failed to effectively confront the enduring national security threat that TikTok and its relationship with the CCP poses to American's and their data, TikTok now seeks to wrap itself in the American flag, citing the First Amendment as the core reason the government ought not be able to force divestiture. *See* TikTok.Br. 28-38. However, as the United States correctly explains, the Act does not even implicate the First Amendment. *See* USA.Br. 59. This is because the Act doesn't target *any protected speech* nor n*anyone with free speech rights*. Rather, it targets the CCP's control of TikTok, and requires divestiture by its Chinese owners if TikTok is to continue to enjoy unabated access to the sensitive personal data of over 170 million Americans. See USA.Br. 1-3. Contrary to TikTok and ByteDance's claims that there is something unique or untoward going on here, the federal government has long regulated foreign ownership and control of companies operating in all sorts of industries. *See, e.g.*, 12 U.S.C. §72 (nationally chartered banks); 16 U.S.C. §797 (dams, reservoirs, and similar projects); 42 U.S.C. §§2131-34 (nuclear facilities); 49

U.S.C. §§ 40102(a)(15), 41102(a) (air carriers). Indeed, the federal government has long regulated foreign ownership telecommunications assets and media, including radio and broadcast television licenses, for nearly identical reasons. 47 U.S.C. § 310(b)(3) (radio and broadcast television); *see Pacific Networks Corp. v. FCC*, 77 F.4th 1160 (D.C. Cir. 2023). In *Pacific Networks*, just last year, this Court upheld the FCC's revocation of authorizations for Chinese telecommunications companies to operate communications lines in the United States because Chinese control of such companies "provid[ed] opportunities for … the Chinese government to access, monitor, store, and in some cases disrupt [or] misroute U.S. communications, which in turn allow them to engage in espionage and other harmful activities against the United States." *Id.* at 1162-63; *see also China Telecom (Americas) Corp. v. FCC*, 57 F.4th 256, 265-66 (D.C. Cir. 2022).

Moreover, even if there is some expressive content on the TikTok platform that would be adversely affected by a required divesture—although TikTok fails to explain what such content might be—Congress can regulate TikTok's pervasive and widespread collection of Americans' personal data, which is not itself expressive activity. *See Sorrell v. IMS*

27

*Health, Inc.*, 564 U.S. 552, 567 (2011) ("[T]he First Amendment does not prevent restrictions direct at commerce or conduct from imposing incidental burdens on speech."); *Haig v. Agee*, 454 U.S. 280, 307 (1981) ("[N]o governmental interest is more compelling than the security of the Nation."). And even if TikTok's recommendation algorithm might be viewed as having some expressive function, in that it ostensibly engages in an editorial function by curating content, such speech is unprotected because it is the speech of foreign entities—ByteDance, TikTok Global, and the CCP—none of whom are entitled to First Amendment protection. *See Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 591 U.S. 430, 436 (2020) ("[P]laintiffs' foreign affiliates possess no rights under the First Amendment."); *see* USA.Br. 59-60. And while TikTok US may be incorporated in the United States, TikTok has made clear that the technology fueling its algorithm is developed in China and is ultimately controlled by its Chinese parent company, ByteDance, which, in turn, faces inexorable pressure—and control—by the CCP. *See* TikTok.Br. 24. Nothing in the First Amendment can be read to shield the covert influence or intelligence collection efforts of a foreign government targeting the American people.

28

The only even *arguably* protected speech that might even *theoretically* be affected is that of American content creators and (perhaps) any content moderation performed by TikTok US that is done completely separate and apart from TikTok's CCP-dominated recommendation algorithm. There are, of course, a number of reasons why this theoretical impact is not actionable. First, speech rights are personal and cannot be raised vicariously by others as TikTok seeks to do in this litigation. *Broadrick v. Oklahoma*, 413 U.S. 601, 610-11 (1973); *see also Murthy v. Missouri*, 144 S. Ct. 1972, 1996 (2024). Second, TikTok has repeatedly made clear that its content moderation is driven primarily by the core TikTok algorithm, which is not only built in and controlled by Chinese entities but is actually significantly responsive to the goals and interests of the CCP. *See, e.g., A Tik-Tok-ing Timebomb: How TikTok's Global Platform Anomalies Align with the Chinese Communist Party's Geostrategic Objectives*, NCRI and Rutgers Miller Center (Dec. 2023), https://perma.cc/4RFG-69RE; *see also* Fergus Ryan, *supra*. Third, to the extent content creators present in this litigation might validly raise their own First Amendment claims, the fact is that while the First Amendment may protect relevant expressive activity and content, it does not

29

guarantee a particular venue for such speech—particularly when the venue is a private forum, not a public space controlled by the government—and even where it is, the government can impose in reasonable content-neutral time, place, and manner restrictions so long as they are content-neutral. *See Heffron v. International Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981); *Kovacs v. Cooper*, 336 U.S. 77, 88-89 (1949). And finally, the availability of a wide and diverse range of alternative venues for American speech—from Instagram to YouTube and beyond—must weigh into any analysis of the claimed infringement of speech rights. *See, e.g.*, *Ward v. Rock Against Racism*, 491 U.S. 781, 802 (1989).

And even if these issues were not themselves insurmountable barriers to TikTok's failed effort to hide behind the U.S. Constitution, the fact that the Act doesn't actually inhibit *any* speech is just such a barrier. Rather than barring speech, as the government correctly points out, "Congress expressly authorized the continuation of [] expressive activities on TikTok so long as the national-security harms could be mitigated." *See* USA.Br. 60.

The Act thus has only an incidental—if any—impact on arguably protected speech. Under longstanding precedent, the Act is therefore lawful so long as it is "within the constitutional power of the Government [and] furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *United States v. O'Brien*, 391 U.S. 367, 377 (1968).

The Act easily meets this test. To begin with, the Framers understood national security to be the "principal purpose[]" of government. The Federalist No. 23 (Alexander Hamilton); *see also* Federalist Nos. 34, 41. The Constitution therefore confers upon Congress robust national-security authority, *see, e.g.*, U.S. Const. art. I, §8, cl. 3, 11, 12, 13 (to regulate foreign commerce, declare war, raise and support armies and the Navy), and vests the President with "[t]he executive Power," establishes him as the "Commander in Chief," *id.* art. II, §1 & §2, cl.1, and making him the Nation's "'sole organ'" in foreign affairs. *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 20 (2015) (quoting *United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 319 (1936)).

31

And as the examples above illustrate, *see supra* at 20-21, it is well established that regulating foreign ownership and control of companies operating within the United States—particularly in the media and tele-communications industries—is within the scope of these broad powers. The Act thus falls safely "within the constitutional power of the Government." *O'Brien*, 391 U.S. at 377. Further, the government's national se-curity interest in preventing "the national-security harms that accom-pany China's ability to exploit TikTok," USA.Br. 59, is "unrelated to the suppression of free expression," *O'Brien*, 391 U.S. at 377, especially be-cause, as noted above, the Act requires divestment of TikTok and nothing more. For the same reason, any incidental burden on protected speech is no "greater than is essential to the furtherance of [the Government's na-tional security] interest," *id.*, especially because "[a]ny TikTok users in the U.S." who might feel some incidental burden on their speech "have the option of turning to other platforms." *See* USA.Br. 60; *see Heffron*, 452 U.S. at 647 ("[T]he First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired.").

32

This is the case regardless of what level of First Amendment scrutiny might be applied. The Act's divestment remedy is narrowly tailored to address the specific national security harms threatened by Chinese control of TikTok as well the government's interest in protecting more than 170 million Americans from the theft and misuse of their sensitive personal data by proxies of a foreign nation-state and the CCP's covert influence efforts. These matters are not simply *a* compelling interest, but perhaps *the most* compelling interest. *See Haig*, 453 U.S. at 307.

## CONCLUSION

For these reasons, the petitions should be denied.

Dated:  August 2, 2024                    Respectfully submitted,


                                          */s/ Thomas R. McCarthy*
                                          Thomas R. McCarthy
                                          Kathleen S. Lane
                                          Consovoy McCarthy PLLC
                                          1600 Wilson Boulevard, Suite 700
                                          Arlington, VA 22209
                                          (703) 243-9423
                                          tom@consovoymccarthy.com
                                          katie@consovoymccarthy.com

                                          *Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 29(a)(5) because it contains 6,497 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it was prepared using Microsoft Word in Century Schoolbook 14-point font, a proportionally spaced typeface.

Dated: August 2, 2024                    */s/ Thomas R. McCarthy*
                                        Thomas R. McCarthy

                                        *Counsel for Amici Curiae*

# APPENDIX A: LIST OF AMICI CURIAE

*The Hon. Michael B. Mukasey*
Former Attorney General of the United States
Former Judge, United States District Court for the Southern District of New York

*The Hon. Jeff Sessions*
Former Attorney General of the United States
Former United States Senator

*The Hon. Chris Inglis*
Former National Cyber Director, The White House
Former Deputy Director, National Security Agency

*The Hon. Christopher A. Ford*
Former Assistant Secretary of State for International Security & Non-proliferation, United States Department of State
Former Senior Director for Weapons of Mass Destruction & Counterproliferation, National Security Council, The White House

*The Hon. Michelle Van Cleave*
Former National Counterintelligence Executive, Office of the Director of National Intelligence
Former General Counsel and Assistant Director, Office of Science and Technology Policy, The White House

*The Hon. William Evanina*
Former Director, National Counterintelligence and Security Center

*Gus P. Coldebella*
Former General Counsel (acting), United States Department of Homeland Security

*Margaret M. Peterlin*
Former Chief of Staff to the Secretary of State, United States Department of State

Former National Security Advisor to the Speaker of the House, United States House of Representatives

*Vice Admiral (Ret.) Mike LeFever*
Former Director of Strategic Operational Planning, National Counterterrorism Center, Office of the Director of National Intelligence
Former Commander of the Office of Defense Representative in Pakistan & Commander of the Joint Task Force in Pakistan

*Norman T. Roule*
Former National Intelligence Manager for Iran, Office of the Director of National Intelligence
Former Division Chief, Central Intelligence Agency

*Dr. Lenora P. Gant*
Former Assistant Deputy Director of National Intelligence for Human Capital, Office of the Director of National Intelligence
Former Senior Executive for Academic Outreach and Science, Technology, Engineering, and Mathematics & Senior Advisor to the Research Directorate, National Geospatial-Intelligence Agency

*Paula Doyle*
Former Associate Deputy Director for Operations Technology, Central Intelligence Agency
Former Deputy National Counterintelligence Executive, Office of the Director of National Intelligence

*Teresa H. Shea*
Former Signals Intelligence Director, National Security Agency

*Michael Geffroy*
Former General Counsel, Senate Select Committee on Intelligence, United States Senate
Former Deputy Chief of Staff and Chief Counsel, Committee on Homeland Security, United States House of Representatives

*Geof Kahn*
Former Senior Advisor to the Director of Central Intelligence, Central Intelligence Agency
Former Policy Director & CIA Program Monitor, House Permanent Select Committee on Intelligence, United States House of Representatives

*Jamil N. Jaffer*
Former Chief Counsel & Senior Advisor, Senate Foreign Relations Committee, United States Senate
Former Associate Counsel to President George W. Bush, The White House

*Rick "Ozzie" Nelson*
Former Director, Joint Interagency Task Force, Joint Special Operations Command
Former Group Chief, National Counterterrorism Center

*Andrew Borene*
Former Senior Officer, Office of the Director of National Intelligence
Former Associate Deputy General Counsel, Department of Defense

*Edward Fishman*
Former Member, Policy Planning Staff, Office of the Secretary of State, United States Department of State
Former Russia and Europe Sanctions Lead, United States Department of State